OPINION
Appellant, Jermale Pittman, was convicted after a jury trial of knowingly causing or attempting to cause harm to another by use of a handgun. Pittman was sentenced to four years in prison on this charge, and three years in prison on a firearm specification. The latter term was to be served prior to and consecutive to the definite term of imprisonment, for a total of seven years actual incarceration.
Pittman filed a timely notice of appeal, and raises the following single assignment of error:
 I. The Appellant was denied effective assistance of counsel as Appellant's attorney failed to timely file and complete the notice of alibi and issue subpoenas as to witnesses material to the defense who would have provided an alibi for trial.
After considering the record, we do not find that trial counsel rendered ineffective assistance of counsel. Accordingly, the judgment of the trial court will be affirmed.
Pittman's conviction arose from a shooting incident which occurred on March 3, 2001, at the home of Yolanda Love. At around 11:30 a.m., Love and her boyfriend, Eric Blackshear, arrived home and found Pittman's car blocking the driveway. They then saw Pittman in the back yard with Yolanda's daughter, Brooke, who was eleven years of age. Pittman was apparently getting directions from Brooke about where Love was. The testimony at trial indicated that Yolanda had dated Pittman and Blackshear at the same time, but may or may not have still been seeing Pittman. When Yolanda and Blackshear saw Pittman, he was holding a gun. No one was apparently alarmed at this fact, as Yolanda was used to seeing the men she dated with guns.
In any event, after Love and Blackshear arrived, they asked Pittman to leave the property. In response, Pittman began shooting the gun at Blackshear. After firing about six shots, Pittman left the scene. He was arrested later that afternoon, at a convenience store. Fortunately, no one was injured as a result of the shooting incident.
A complaint was filed against Pittman in Dayton Municipal Court, and a preliminary hearing was held on March 13, 2001. After the Municipal Court found probable cause, Pittman was remanded into the custody of the Montgomery County Sheriff's Office pending action of the grand jury. Subsequently, the Montgomery County Grand Jury issued an indictment, and counsel was appointed for Pittman on April 12, 2001.
An entry was filed setting a final pre-trial on May 22, 2001, and trial on May 29, 2001. The court also filed an order on May 7, 2001, granting the request of Pittman's attorney for a transcript of the preliminary hearing. A list of potential witnesses was filed by the State on May 22, 2001. These witnesses were the same individuals who had been subpoenaed for the preliminary hearing, except for a few police officers. Pittman did not file a list of witnesses.
At 9:13 a.m. on the morning of the jury trial, Pittman's attorney filed a notice of alibi and a list of proposed witnesses. The notice was "hand-delivered" to the prosecutor, and indicated that Pittman intended to call four witnesses to show that he was at Carlton Jackson's home (at 1823 Oakridge, Dayton, Ohio), at the time of the shooting. According to the notice, Pittman, Jackson, and three other people were at the house that day, preparing for a barbeque. Jackson's address was listed, but the addresses of the three other witnesses were listed as "unknown."
At about 9:25 a.m., the trial judge met with the defense and prosecution to discuss the notice of alibi. At that time, Pittman's attorney said that he had received a late transcript of the preliminary hearing and was just able to pick it up the preceding week. When he brought the transcript to Pittman on the Friday before trial, Pittman discussed with him what had happened the day of the shooting. At that time, Pittman said he believed he had been at a barbeque, and gave his attorney a list of alibi witnesses.
Pittman's attorney said he had also discussed alibi witnesses with Pittman several weeks before trial. At that time, Pittman discussed the fact that when he was arrested, a corrections officer from the Dayton Rehabilitation Center was at the convenience store (the place of the arrest). However, no notice of alibi was filed because there was no way to identify the officer. (We note that the testimony of the corrections officer would have been of no value, anyway, since the arrest occurred several hours after the shooting.) In any event, Pittman's attorney then commented that:
 [s]ome time between that discussion several weeks ago and last week is when Mr. Pittman * * * finally reviewed his discovery enough to notice when * * * the incident occurred and where he was, and he gave me those list of names. So we did request — or file a Notice of Alibi and * * * a list of those witnesses who weren't known to me until * * * last Friday.
Pittman's attorney noted that he had tried to contact the witnesses over the weekend, but was unsuccessful. Pittman was present during the alibi conference, and mentioned to the court that one witness (Jackson) was in the courtroom, and was available to testify.
Following the above remarks from the defense, the State strenuously objected to the proposed alibi witnesses. First, the prosecutor pointed out that the final pre-trial had been held only a week earlier, and that defense counsel had said then that he did not intend to call any witnesses. The prosecutor went on to note that the offense took place three months earlier, and the defendant was either at the crime scene or he was not. Thus, the prosecutor felt the alibi notice was an "eleventh-hour" attempt to avoid conviction and ambush the State. Finally, the prosecutor stated that Pittman had given a different account of his whereabouts when he was interviewed shortly after the shooting.
After hearing from both sides, the trial court overruled the motion because the notice of alibi witnesses was not timely filed. Following voir dire, the court let defense counsel proffer what the testimony of the proposed witnesses would have been. At that time, defense counsel stated that Jackson (Pittman's half-brother) was the primary witness, and would have testified that he was with Pittman all day long, up to the time Pittman was arrested at 3:00 or 4:00 p.m. The three other alibi witnesses were also with Pittman from some time in the morning until the afternoon, at an uncle's house, where they were preparing for a barbeque or party.
In response to the proffer, the prosecutor commented that she had been present when the defense interviewed Jackson, and was able to ask him some questions. The prosecutor described Jackson's recollection as "hazy" and "unclear" until he received some assistance with dates, times, and places. Additionally, the prosecutor said that Pittman told a police detective that he was home alone at the time of the shooting. Pittman's interview with the detective took place the day after the shooting incident. Upon hearing the proffer and the State's response, the trial court again ruled that the alibi testimony would not be allowed.
With regard to alibi witnesses, Crim. R. 12.1 provides that:
 [w]henever a defendant in a criminal case proposes to offer testimony to establish an alibi on his behalf, he shall, not less than seven days before trial, file and serve upon the prosecuting attorney a notice in writing of his intention to claim alibi. The notice shall include specific information as to the place at which the defendant claims to have been at the time of the alleged offense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant for the purpose of proving such alibi, unless the court determines that in the interest of justice such evidence should be admitted.
The purpose of the notice requirement is "to protect the prosecution from false and fraudulent claims of alibi, often presented by the accused so near the date of the trial as to make it nearly impossible for the prosecution to ascertain any facts as to the credibility of the witnesses called by the accused." State v. Clinkscale (Dec. 23, 1999), Franklin App. No. 98AP-1586, 2000 WL 775607, p. 4. The Ohio Supreme Court has said that the interests of justice may require admission of untimely filed alibi testimony "[i]f the alibi testimony does not surprise or otherwise prejudice the prosecution's case * * * and if the defense operated in good faith when it failed to give proper notice of an alibi defense." Statev. Smith (1977), 50 Ohio St.2d 51, 53-54. Another way of saying this is that "when the alibi evidence does not surprise or otherwise prejudice the prosecution's case, and when it is apparent that the defense acted in good faith, the exclusion of alibi evidence can constitute an abuse of discretion." Clinkscale, 2000 WL 775607, p. 4.
The assignment of error in the present case is not phrased in terms of a trial court abuse of discretion. Instead, Pittman contends that trial counsel was ineffective by failing to timely file the notice of alibi and by failing to issue subpoenas to material witnesses.
Based on the facts of record, we do not find that Pittman's trial counsel was ineffective. In this regard, the Ohio Supreme Court has held that:
 [c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To show prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus.
In contending that his trial attorney was ineffective, Pittman relies on Middletown v. Allen (1989), 63 Ohio App.3d 443, in which the court held that trial counsel substantially violates an essential duty and materially prejudices the defense "where counsel is aware of potential alibi witnesses and fails to subpoena them for trial." Id. at 445. While this is a correct legal statement, the present case differs significantly from Allen. Specifically, the attorney in Allen was aware of a witness but failed to subpoena him. Id. at 447.
In contrast, Pittman's trial counsel was not notified of potential alibi witnesses until the Friday before the Tuesday trial (the intervening business day was a holiday). Furthermore, even if the late notice could have been overcome, counsel could not subpoena the witnesses because he was not given their addresses. Attempts to locate the witnesses over the weekend were also unavailing. The one witness who could have been subpoenaed due to an available address, did, in fact, appear in court on the day of trial. In view of these facts, the issue of failing to subpoena witnesses is irrelevant.
As a consequence, the error, if any, was in failing to file a timely notice of alibi. However, counsel cannot be charged with this mistake, since Pittman chose not to give his attorney the relevant information until a few days before trial. As is evident from trial counsel's remarks to the court, Pittman neglected to timely review the discovery materials and find out when the incident occurred.
Logically, such a scenario is hard to fathom, since Pittman would have been present at the preliminary hearing, and would have learned then when the crime occurred. Notably, the preliminary hearing was held more than two months before trial. We also suspect that Pittman would have been told the alleged time of the shooting incident when he was arrested. Consequently, if Pittman had legitimate alibi information to give his attorney, he had ample opportunity to do so. He also had a strong motive, since his freedom was at stake.
Unfortunately, the transcript of the preliminary hearing is not in the record, and the arresting officer did not testify at trial about his interview with Pittman. However, even if we accept Pittman's scenario at face value, we must find that the choice to wait, and, therefore, any error, rests solely on Pittman's shoulders. In this regard, we note that Pittman and his attorney discussed one potential alibi witness several weeks before trial. In fairness to his attorney, Pittman should have disclosed any information then that he had about other potential defense witnesses. Instead, Pittman waited until a few days before trial, and even then, furnished incomplete information.
We have previously stressed that we "cannot countenance a form of invited error whereby a party hinders the efforts of her attorney to provide effective representation, and then later complains about the quality of that representation." In the Matter of Dixon (Apr. 24, 1998), Clark App. Nos. 97-CA-0027, 97-CA-0028, 1998 WL 214602, p. 7. We still agree with this comment, and feel it is applicable here.
Accordingly, we find that the performance of Pittman's attorney did not fall below objective standards of reasonable representation. As a result, we do not need to discuss the second requirement for ineffective assistance of counsel, i.e., that prejudice arose from counsel's performance. We do note that the evidence against Pittman (three eye-witnesses who personally knew Pittman and identified him as the shooter) was overwhelming.
In light of the above discussion, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
WOLFF, P.J., and GRADY, J., concur.